THE STATE OF OHIO, APPELLEE, *v.* WILLIAMS, APPELLANT.

[Cite as State *v.* Williams (1983), 6 Ohio St. 3d 281.]

(No. 82-659—Decided August 24, 1983.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. William E. Breyer,* for appellee.

*Mr. H. Fred Hoefle,* for appellant.

LOCHER, J. Appellant in the case at bar predicates his request for reversal of his convictions on four bases. First, he asserts that the trial court erred in admitting his first confession and a gun into evidence as the arrest which led to both was unlawful. Secondly, appellant contends that the trial court committed prejudicial error in excluding him from an in camera *voir dire* of several of the jurors in his trial. Thirdly, appellant argues that the trial court abused its discretion by failing to dismiss one of the jurors upon completion of the *voir dire.* Finally and most importantly, appellant charges that the trial court committed reversible error in admitting his second confession into evidence as the statement was secured through a violation of his guarantee against compulsory self-incrimination. Although appellant's arguments are not without some merit, we find appellee's position the more persuasive.

I

Relying on the United States Supreme Court's decision in *Payton* v. *New York* (1980), 445 U.S. 573, appellant asserts that his arrest, executed without a warrant, contravened his Fourth and Fourteenth Amendment rights and, thus, that all evidence obtained as a result of the arrest was, through operation of the "exclusionary rule,"[1] inadmissible at trial. Appellant, however, overlooks the fact that even under the rule of law set forth in *Payton, supra,* warrantless arrests are not *per se* illegal. An otherwise unlawful arrest may be valid if exigent circumstances necessitated the warrantless seizure or if the arresting officers were acting in good faith and in compliance with then permissible standards of conduct. *United States* v. *Peltier* (1975), 422 U.S. 531; *Warden* v. *Hayden* (1967), 387 U.S. 294; *Schmerber* v. *California* (1966), 384 U.S. 757.

The court in *Payton, supra,* at 583, recognized "that the warrantless en-

---

[1] The exclusionary rule acts to prevent the admission at trial of evidence obtained through the performance of illegal searches and seizures. *Rios* v. *United States* (1960), 364 U.S. 253; *Giordenello* v. *United States* (1958), 357 U.S. 480. The rule is enforceable against the states through operation of the Fourteenth Amendment Due Process Clause. *Mapp* v. *Ohio* (1961), 367 U.S. 643 [16 O.O.2d 384]; *Ker* v. *California* (1963), 374 U.S. 23.

try to effect Payton's arrest might have been justified by exigent circumstances," but declined to consider the issue as it had not been raised in earlier proceedings. Although conditions validating a warrantless arrest were treated as absent in *Payton*, they exist in the present action. Clearly, the police officers had to act quickly and decisively if they were to effect appellant's capture before he fled. Indeed, appellant was in the process of exiting from the rear of his home when he was apprehended. Both of his co-defendants, who lived within blocks of appellant, had already been arrested, and it was reasonable to assume that he would soon learn of their capture and immediately formulate plans to escape and conceal or destroy all evidence of the crime. Faced with these realities, the officer's actions were not only lawful but imperative. Under circumstances such as were extant in the instant action, the Constitution does not require the subordination of the public's interest in the speedy apprehension of dangerous felons and the seizure of their weapons to the felon's individual right to be arrested only after service of a warrant.

Perhaps even more significantly, however, the "good faith" exception to the retroactive operation of the exclusionary rule precludes its application in the case at bar. As the United States Supreme Court stated in *Peltier, supra,* at 535-536:

"* * * It is indisputable * * * that in every case in which the Court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the factfinding process, the Court has concluded that any such new constitutional principle would be accorded only prospective application. *Linkletter* v. *Walker*, 381 U.S. 618 (1965); *Johnson* v. *New Jersey*, 384 U.S. 719 (1966); *Stovall* v. *Denno*, [388 U.S. 293 (1967)] * * *; *Fuller* v. *Alaska*, 393 U.S. 80 (1968); *Desist* v. *United States*, 394 U.S. 244 (1969); *Jenkins* v. *Delaware*, 395 U.S. 213 (1969); *Williams* v. *United States*, [401 U.S. 646 (1971)] * * *; *Hill* v. *California*, 401 U.S. 797 (1971)."

The court in *Peltier, supra* at 538, then proceeded to find that such "judicial integrity" is "* * * not offended if law enforcement officials reasonably believed in good faith that their *conduct* was in accordance with the law even if decisions subsequent to the search or seizure have held that conduct of the type engaged in by the law enforcement officials is not permitted by the Constitution." (Emphasis *sic*.)

The United States Supreme Court's consistent refusal to apply the exclusionary rule retroactively to cases where the objected to police conduct was not, at least at the time of the subject action, unlawful is a direct function of the rule's primary intent. The predominant, if not the only, purpose of the exclusionary rule is to deter future unlawful police activity. *Michigan* v. *DeFillippo* (1979), 443 U.S. 31, 38, fn. 3; *United States* v. *Janis* (1976), 428 U.S. 433, 446; *United States* v. *Calandra* (1974), 414 U.S. 338, 347. Where the objective of deterrence is not served, no rationale exists for application of

the rule. For this reason, the exclusionary rule has no relevancy in the case *sub judice.*

In effecting appellant's arrest, the police officers were acting in accordance with the explicit language and judicial interpretation of R.C. 2935.04. The statute provides that:

"When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."

Before the United States Supreme Court rendered its decision in *Payton,* warrantless arrests in a suspect's home were routine and their validity unchallenged. Thus, the law enforcement officials who, three years before *Payton,* effected such an arrest of appellant were acting in good faith reliance upon a then constitutional interpretation of R.C. 2935.04. The exclusionary rule was never intended to punish such well intentioned conduct. Neither was it meant to inculcate in police officers, who must often act almost instinctively if the public will is to be executed, a paralyzing fear concerning the propriety of theretofore lawful behavior. Sincere compliance with then valid laws, not a studied reflectiveness as to the laws' legality, is all that the Constitution requires of police officers. Consequently, we must dismiss appellant's contention that protection of his Fourth Amendment freedoms mandated the exclusion of both his first confession and the gun from evidence at his trial.

## II

Prior to the commencement of the trial in the present action, the jury was taken to view the scene of the crime. There, the jury was to observe, *inter alia,* the bullet hole left in the wall of the gas station office as a result of the fatal discharge. Because of the size of the office, only a few jurors could enter it simultaneously. While one group was inside the office, the manager of the station directed the group's attention to the bullet hole. The bailiff, who was responsible for conducting the viewing and whose duty, in fact, it was to point out the hole, promptly admonished the manager not to have any additional contact with the jurors, and the latter complied.

When the court reconvened, appellant immediately moved for a mistrial on the basis of the manager's unauthorized communication with the jury. The court subsequently conducted an in camera *voir dire* of the affected jurors. Appellant propounds two arguments for the reversal of his conviction, predicated upon the court's alleged error in performing the *voir dire.*

Appellant first asserts that the trial court committed prejudicial error by conducting the *voir dire* in his absence. Indeed, it is appellant's specific contention that the court's failure to make the appropriate provisions for his attendance at the proceedings constituted a violation of his state and federal constitutional rights as well as of the protection afforded him under Crim. R.

43(A). Although we accept his thesis that the court acted improperly, we decline to hold such error prejudicial.

The Fifth Amendment to the federal Constitution, enforceable against the states through the Fourteenth Amendment, prohibits the various states from depriving any person "of life, liberty, or property, without due process of law." Similarly, Section 10, Article I of the Ohio Constitution mandates that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." As the constitutional principle of "due process" has evolved on both the state and federal levels, the courts have broadened its guarantees to mandate the presence of the defendant, absent waiver of his rights or other extraordinary circumstances, at every stage of his trial. See *Illinois* v. *Allen* (1970), 397 U.S. 337, 338; *State* v. *Grisafulli* (1939), 135 Ohio St. 87 [13 O.O. 440]; *Shields* v. *United States* (1927), 273 U.S. 583, 588-589; *Jones* v. *State* (1875), 26 Ohio St. 208. In Ohio, the expanded scope of the Due Process Clause, at least in criminal proceedings, had been embodied in Crim. R. 43 (A) which provides, in pertinent part, that a "defendant shall be present at * * * every stage of the trial * * *." Thus, the trial court's failure to ensure appellant's presence at the *voir dire* proceeding was a transparent violation of both his constitutional and statutory rights. The error, however, at least as clearly, did not constitute grounds for reversal.

Errors of constitutional dimension are not *ipso facto* prejudicial. As the United States Supreme Court stated in the landmark case of *Chapman* v. *California* (1967), 386 U.S. 18, 22: "* * * We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." In order to be deemed nonprejudicial, error of constitutional stature, either state or federal, must be "harmless beyond a reasonable doubt." *Chapman* v. *California, supra,* at 24; *State* v. *Abrams* (1974), 39 Ohio St. 2d 53 [68 O.O.2d 30], paragraph two of the syllabus. Particularly, as regards a defendant's constitutional right to be present at all stages of his trial, prejudicial error exists only where "a fair and just hearing * * * [is] thwarted by his absence." *Snyder* v. *Massachusetts* (1934), 291 U.S. 97, 108. See, also, *United States* v. *Brown* (C.A. 6, 1978), 571 F. 2d 980.

For several reasons, appellant's "due process" rights were not appreciably impaired by his absence at the *voir dire* proceedings. First, his interests were more than adequately represented by his attorney who was present at the *voir dire*. Several federal circuit courts of appeals have recently faced analogous "due process" problems. The appellate court in *Henderson* v. *Lane* (C.A. 7, 1980), 613 F. 2d 175, 179, rejecting defendant therein's claim that the failure to secure his attendance at a proceeding to reinstate an alternate juror was reversible error, found his attorney's presence at the proceeding to be "[t]he most obvious barrier to prejudice in * * * [the] case." Similarly, the review court in *United States* v. *Brown, supra,* at 987, ruled

that defense counsel's active participation in an in-chamber conference regarding the dismissal of a juror negated any prejudicial impact that might have resulted from defendant's absence during the discussion.

Moreover, appellant's attendance at the *voir dire* would have contributed little to his defense. Appellant did not personally observe the improper communication, and his own conduct was not at issue in the proceeding. Finally, appellant's failure timely to object to his absence constituted a waiver of his right to be present, relieving this court of any duty to consider the issue. See *State* v. *Williams* (1977), 51 Ohio St. 2d 112 [5 O.O.3d 98]; *State* v. *Gordon* (1971), 28 Ohio St. 2d 45 [57 O.O.2d 180]; *State* v. *Glaros* (1960), 170 Ohio St. 471 [11 O.O.2d 215]. That the privilege waived had constitutional implications is of no significance as such rights too, if not properly exercised, may lapse. *State* v. *Lancaster* (1971), 25 Ohio St. 2d 83, 87 [54 O.O.2d 222]; *State* v. *Childs* (1968), 14 Ohio St. 2d 56, 62 [43 O.O.2d 119]. See, also, *United States* v. *Brown, supra.*

The trial court's failure to secure appellant's attendance at the *voir dire* was not only nonprejudicial under constitutional standards but was also a harmless violation of Crim. R. 43 (A). Harmless error is defined in Crim. R. 52 (A) as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights * * *." We find that for the same reasons the court's misfeasance was not reversible error under the *Chapman* constitutionally oriented test, it is similarly not prejudicial under the guidelines found in the Ohio Rules of Criminal Procedure for determining the import of statutory offenses. Appellant's absence in no way worked an impairment of any "substantial" right guaranteed him by statute.[2]

## III

Appellant also seeks reversal of his conviction based on the trial court's alleged abuse of discretion in failing to dismiss a juror, Helen D. Kopp, upon conclusion of the *voir dire.* In support of his argument, appellant cites from the following excerpt from the transcript of the proceeding during which the court queried Kopp as to the possible prejudicial effect of the gas station manager's remarks to her:

"THE COURT: Is there anything about what was said that would prejudice you in any way * * *?

"JUROR KOPP: No, I don't believe so.

"THE COURT: Will you set aside anything you heard from your mind and not be influenced by it?

"JUROR KOPP: Yes.

---

[2] In all relevant respects, Fed. R. Crim. P. 43(a) is virtually identical to Ohio Crim. R. 43(A). In *United States* v. *Brown, supra,* at 987, the court's failure to provide for defendant's attendance at an in-chambers conference regarding a juror's dismissal was not found to be prejudicial error under either constitutional or federal statutory, *i.e.,* Fed. R. Crim. P. 43(a), guidelines. See, also, *United States* v. *Gregorio* (C.A. 4, 1974), 497 F. 2d 1253.

"THE COURT: Okay Miss Kopp, I'm going to ask that you step outside. Go to the jury room.

"* * *

"THE COURT: Just a minute, Miss Kopp. I do want to instruct you that what was said was not evidence and it should not be considered in any way and you have assured me that you will not consider it in any way, is that correct? Would you say yes for the record?

"MR. GAINES [defense counsel]: I think the record should reflect that the prospective juror shrugged her shoulders.

"THE COURT: Will you disregard it and not consider it in any way?

"JUROR KOPP: Yes, I suppose so.

"THE COURT: Okay. Thank you.

"MR. GAINES: I believe the answer was, yes, I suppose so. I would like the record to reflect that.

"THE COURT: Ma'am, did you want to say something?

"JUROR KOPP: I don't know. I'm confused about the whole thing.

"THE COURT: Well, I'm asking you to set aside anything you have heard which you said you would do originally when you were accepted as a juror. Will you do that?

"JUROR KOPP: Yes."

It has long ago been established in this jurisdiction that a court's determination in a *voir dire* proceeding of a prospective juror's fairness and impartiality constitutes reversible error only when it can be shown that the court, in conducting the examination, clearly abused its discretion. *State* v. *Wilson* (1972), 29 Ohio St. 2d 203, 211 [59 O.O.2d 220]; *State* v. *Ellis* (1918), 98 Ohio St. 21, paragraph one of the syllabus. The court's decision in the present action not to discharge juror Kopp is hardly so unreasonable as to mandate the invalidation of appellant's convictions.

At least twice, Kopp gave unqualifiedly affirmative replies to the court's inquiries concerning her capacity to disregard and to remain impartial despite the improper communication she had been exposed to. Moreover, her responses "I don't believe so" and "I suppose so" to the same questions cannot alone be said to cast any significant doubt over her ability still to render an unbiased decision. Both expressions are colloquialisms and, depending on the facial movements or physical gesture that accompany them, can be as unequivocal as a "yes" answer. As the trial court was in position to observe her demeanor during the *voir dire,* we will not now challenge the propriety of its determination.

Appellant also attaches significance to Kopp's statement, "I'm confused about the whole thing," asserting that the utterance is a testament to her incapacity to continue as a juror. Again, appellant is unpersuasive. Kopp's admitted confusion, if a result of anything, was probably a product of her bewilderment as to why such an elaborate proceeding was being conducted simply to ensure that the gas station attendant's purely unintentional and relatively trivial breach of the court's rules did not compromise her objectivi-

ty. The cited comments and the record as a whole fail to substantiate appellant's claim that Kopp was no longer capable of fairly and impartially considering his guilt or innocence. Therefore, we have no alternative but to dismiss appellant's contention that the trial court abused its discretion in retaining Kopp as a juror.

## IV

Appellant's final and most compelling argument is that the trial court committed prejudicial error in admitting into evidence over objection his second confession, which was given while he was in custody at the police station. Appellant, relying upon the United States Supreme Court's ruling in *Edwards* v. *Arizona* (1981), 451 U.S. 477, asserts that the statement was obtained through contravention of his Fifth and Fourteenth Amendment rights to have counsel present during his interrogation. This proposition, like that involving appellant's absence from the in camera *voir dire* proceeding, requires a two-fold analysis, *i.e.,* did the trial court err, and if so, was such error prejudicial?

The controversial colloquy between the police officers and appellant occurred when appellant allegedly requested an opportunity to relate his version of the shooting. After he was advised of his rights, the following discussion ensued:

"Q. ([Detective] McLaren): With these rights in mind do you want to talk to us at this time?

"A. [Williams]: Depending on what?

"Q. Did you understand what I just said?

"A. Yes.

"Q. Do you wish to talk to us at this time?

"A. I would like to have an attorney, you know. [Here the tape is unclear. Williams further stated either 'if I can afford one' or 'but I can't afford one.']

"Q. ([Detective] Simmons): Okay Tyrone, that is your privilege, of course. Your rights were explained to you by the patrolman also, weren't they?

"A. Yes, sir.

"Q. Okay, you understood the part where it said that you could start to talk to us and stop at any time you wanted to, didn't you?

"A. Yes.

"Q. Okay, you understood each and all of your rights?

"A. I surely did.

"Q. Okay, is it your choice then that you wish not to talk to us at this time or would you like to start to talk to us or * * *

"A. I know I can say I didn't plan no robbery. I have no idea of it at all.

"Q. Well we have to * * *, in other words we don't know what we are talking about really or what you are trying to tell us until we can hear your side of the story which we have heard from the other two guys side of the

story but we don't know just exactly what your side is. We are completely in the dark sitting here like this. So if you wish to talk to us as your rights said you can and stop at any time or you can have an attorney. That's your prerogative.

"A. I know Tony Metz, Tony Metz had * * *, I had the gun * * *." (Ellipsis *sic*.)

The United States Supreme Court recently articulated standards by which the legality of the police conduct in the present action may be judged. The court in *Edwards, supra,* held that once an accused who is undergoing custodial interrogation invokes his right to counsel, all further questioning must cease and may not be resumed in the absence of counsel unless the accused thereafter effects a valid—voluntary, intelligent and knowing—waiver of his right to counsel or himself renews communication with the police. The fact that the suspect may have responded to further police-initiated interrogation before the requested counsel was furnished does not legitimize such police behavior. Moreover, interrogation in the context of *Miranda* rights, "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the subject." *Rhode Island* v. *Innis* (1980), 446 U.S. 291, 301. Further, whether such "words or actions" are to be considered interrogation is to be ascertained from the perceptions of the suspect, rather than the intent of the police. *Id.*

It is apparent that, based on the *Edwards* and *Innis* holdings, the conduct of the interrogating officers in the instant action must be declared unconstitutional. Appellant's request for counsel was never fulfilled although at no time did he waive his right to an attorney. Furthermore, it was the police officers, not appellant, after counsel was requested, who initiated the interrogation which culminated in the confession. Contrary to appellee's assertion, the police officers did more, in querying appellant after he invoked his right to counsel, than merely ask him to clarify his demand for legal representation. The police officers' constant reminders to appellant, a young man facing murder and robbery charges, that they know his accomplices' side of the story but not his, can certainly be expected to engender incriminating statements, particularly when appellant is aware that his accomplices have already implicated him. It is hardly surprising then that, under such circumstances, an accused, feeling himself evidentially outnumbered, will admit to some degree of complicity in the criminal offense. This is exactly what happened.

Although we find the police officers' conduct and, consequently, the admission of the confession improper, we do not, however, conclude that such error is prejudicial. Where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless "beyond a reasonable doubt" if the remaining evidence alone comprises "overwhelming" proof of defendant's guilt. *Harrington* v. *California* (1969), 395 U.S. 250, 254. The *Harrington* test is easily met in the case at bar.

Two witnesses testified that appellant told them that on the night in question he had shot a gas station attendant at Speedway because the "dude" ("attendant") had made him "mad" or "more upset." A third witness stated that later on the same night she heard him say that he might have to "do" ("shoot") another person. Moreover, testimony was presented probative of the fact that appellant had possession of the murder weapon on the night of the homicide and that he voluntarily indicated its location to the arresting officers. As significantly, appellant confessed to one of the arresting officers and testified at trial that he had accidentally shot the gas station attendant. Credible testimony was adduced, however, that the gun's mechanical features prevented its accidental discharge.

Furthermore, that the taped confession was merely cumulative and superfluous is evident from the fact that appellant in the statement, as in his initial confession and at trial, maintained that the shooting was accidental. In actuality, if anything, admission of the tape should have led to the acceptance of his "accident" defense and have militated *against* appellant's conviction of aggravated murder. It is clear that his defense, despite the tape, was simply not believed. We cannot, therefore, find the admission of the taped confession to constitute grounds for reversal.

On the basis of the foregoing, we reject each of appellant's arguments urging reversal of his convictions for aggravated murder and aggravated robbery. Accordingly the judgment of the court of appeals, upholding the convictions, is affirmed.

*Judgment affirmed.*

SWEENEY, HOLMES, O'NEILL and J. P. CELEBREZZE, JJ., concur.

CELEBREZZE, C.J., and W. BROWN, J., concur separately.

O'NEILL, J., of the Seventh Appellate District, sitting for C. BROWN, J.

CELEBREZZE, C.J., concurring. Although I concur in paragraphs three, four, five and six of the syllabus, I am unwilling to join paragraphs one and two because, in my view, the only issue genuinely before the court in this appeal is whether the admission of appellant's statement made to police officers was prejudicial error under *Edwards* v. *Arizona* (1981), 451 U.S. 477.

The relevant procedural history of the case *sub judice* is as follows. Appellant originally assigned several errors in the original appeal of his convictions to the court of appeals. Among those assignments of error, appellant raised the issue of the legality of the admission of a statement he had made to the interrogating police officers. The court of appeals affirmed appellant's convictions and overruled the assignment of error concerning the admission of the statement. Appellant then sought review in this court by motion for leave to appeal. Appellant raised several issues including a proposition of law relating to the admission of his statement. This court overruled appellant's motion *in toto*.

Following the court's denial of review, appellant petitioned the United States Supreme Court for a writ of certiorari and raised, *inter alia,* the question of whether the admission of his statement was proper. The United States Supreme Court granted the writ of certiorari, vacated the judgment of the court of appeals, and remanded in light of *Edwards, supra.*

On remand, the court of appeals held that, even under *Edwards,* there was no error committed at appellant's trial and, if there was an error under *Edwards,* it was harmless beyond a reasonable doubt. In addition, the court of appeals below incorporated its holdings from its previous opinion on the other issues raised initially by appellant. This court subsequently allowed appellant's motion for leave to appeal in order to review the decision of the court of appeals below.

In my view, upon consideration of this court's overruling of appellant's earlier motion for leave to appeal and the United States Supreme Court's vacation and remand in light of *Edwards, supra,* the scope of the instant appeal is limited to a consideration of issues upon which *Edwards* had an arguable impact. That being the case, today's decision should have been confined to a discussion of whether there was error under *Edwards.* While I concur in the court's determination that, under *Edwards,* error was committed at appellant's trial but that it was harmless beyond a reasonable doubt, the remainder of the majority opinion is unnecessary surplusage. Judgments on the remaining issues became final after the United States Supreme Court remanded only to consider the impact of *Edwards, supra.*

Accordingly, I concur in the judgment.

W. BROWN, J., concurs in the foregoing concurring opinion.