OPINION
Appellant Glenn Featherston appeals the decision of the Fairfield County Court of Common Pleas that denied his motion to suppress. The following facts give rise to this appeal. On August 17, 1997, while on routine patrol, Patrolman Matt Chambers of the Lancaster Police Department received a radio dispatch describing a vehicle suspected of being involved in the theft of a large amount of antifreeze in Franklin County. The dispatcher described the vehicle as a red full-sized van, with firewood on top, and license plate number PAM8120. After receiving this dispatch, Patrolman Chambers noticed a vehicle that matched the dispatcher's description. Patrolman Chambers began following the vehicle and eventually effectuated a stop. Patrolman Chambers requested appellant to step out of his vehicle and accompany him back to his cruiser. Appellant complied with Patrolman Chambers' request. Patrolman Chambers informed appellant of the purpose of the stop. Appellant denied being involved in the theft of antifreeze and began emptying his pockets. Patrolman Chambers instructed appellant to place the items removed from his pockets on the trunk of his cruiser. Pursuant to normal police procedure, Patrolman Chambers conducted a pat-down search of appellant. During the pat-down search, Patrolman Chambers asked appellant if he had any weapons under his hat. Appellant responded that he did not. Thereafter, Patrolman Chambers removed appellant's hat. After removing the hat, Patrolman Chambers noticed a rock rolling around inside the hat. Patrolman Chambers believed the rock to be cocaine and asked appellant what it was. Appellant responded that the rock was cocaine. At that point, Patrolman Chambers placed appellant under arrest and transported him to the Lancaster Police Department. Upon arrival at the police department, Patrolman Chambers read appellant his Miranda rights. On January 30, 1998, the Fairfield County Grand Jury indicted appellant on one count of possession of cocaine. Appellant entered a plea of not guilty on June 23, 1998. On July 10, 1998, appellant filed a motion to suppress on the basis that there was no reasonable suspicion to justify the stop and frisk and the statement appellant made that it was cocaine was made pursuant to a custodial interrogation prior to any Miranda warnings. The trial court conducted a hearing on appellant's motion on October 19, 1998. On December 15, 1998, the trial court issued its decision and journal entry overruling appellant's motion to suppress. Subsequently, on February 16, 1999, appellant entered a plea of no contest to the charge contained in the indictment. The trial court found appellant guilty and sentenced him to eight months actual incarceration in prison, a fine of $250 plus costs and a six-month drivers license suspension. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE ALLEGED ROCK OF COCAINE OBTAINED BY THE LAW ENFORCEMENT OFFICER FROM DEFENDANT.
 II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE INCRIMINATING STATEMENT OBTAINED BY THE LAW ENFORCEMENT OFFICER FROM DEFENDANT.
Standard of Review
On appeal, appellant does not challenge the trial court's findings of fact as being against the manifest weight of the evidence. Appellant also does not allege the trial court failed to apply the appropriate test or correct law to the findings of fact. We find appellant contends the trial court incorrectly decided the ultimate or final issue raised in his motion to suppress. When reviewing this type of claim, we must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96; State v. Claytor (1993),85 Ohio App.3d 623, 627; and State v. Guysinger (1993), 86 Ohio App.3d 592,594. It is based on this standard that we review appellant's two assignments of error.
 I
In his First Assignment of Error, appellant contends the trial court should have suppressed the rock of cocaine because Patrolman Chambers failed to specify any facts on which to base reasonable suspicion that appellant was armed or dangerous, and any frisk of his person was unwarranted and unlawful and any evidence seized therefrom should have been suppressed. We disagree. In addressing the first issue raised in his First Assignment of Error, appellant concedes that under Terry v. Ohio (1968) 392 U.S. 1, Patrolman Chambers validly stopped his vehicle under the fellow officers rule because Terry permits a brief detention of an individual for purposes of investigation whenever an officer suspects that the individual is involved in criminal activity. Terry at 73. To justify such a stop, the seizing officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant the officer's suspicion of criminal activity. Id. at 20. In the case sub judice, Patrolman Chambers' suspicion was based on information provided by the dispatcher that the suspect was driving a full-sized van, with firewood on top, and license plate number PAM8120. Pursuant to this information, Patrolman Chambers had specific and articulable facts to base a stop of appellant's van. Once a stop has occurred, an officer may conduct a limited pat-down search for weapons where he has reason to believe that he is dealing with an armed and dangerous individual, based on the specific, reasonable inferences which he is permitted to draw from the facts of the case. Id. at 26. "There is no legal requirement that a law enforcement officer feel `scared' by the threat of danger." State v. Ringer (Oct. 16, 1997), Ashland App. No. 96 CA 1199, unreported, at 2, citing State v. Evans (1993), 67 Ohio St.3d 405, 413. "Rather, `evidence that the officer was aware of sufficient specific facts as would suggest he was in danger' satisfies the test set forth in Terry." Id. At the suppression hearing, Patrolman Chambers testified that he conducted the pat-down search pursuant to standard procedure. Tr. Suppression Hrng, Oct. 19, 1998, at 32. Patrolman Chambers explained that he conducted the pat-down search for officer safety. Id. In addressing a pat-down search on the basis of officer safety, the Fourth District Court of Appeals stated: Here, the officers' pat-down search of defendant was in accordance with standard police procedure which dictates that protective measures be taken before a person is to be held in the back of a squadron car. A determination as to the reasonableness of a particular police procedure depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." United States v. Brignoni-Ponce (1975), 422 U.S. 873, 878, 95 S.Ct. 2574, 2579,45 L.E.2d 607, 614-615. Certainly, it is reasonable that the officer, who has a legitimate reason to so detain that person, is interested in guarding against an ambush from the rear. "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." [State v. Andrews (1991),57 Ohio St.3d 86, 88, 565 N.E.2d 1271, 1273.] We, therefore, find that the police officers' proffered justification in patting down the driver-their own personal security-is legitimate. When balanced against the driver's minimal privacy interest under these circumstances, we can only conclude that the driver of a motor vehicle may be subjected to a brief pat-down search for weapons where the detaining officer has a lawful reason to detain said driver in the patrol car. State v. Potts (Dec. 7, 1994), Washington App. No. 93 CA 29, unreported, at 6.
Although Patrolman Chambers did not testify that he immediately intended to place appellant in the back of his cruiser, we find the circumstances warranted Patrolman Chambers' pat-down search based on officer safety. Patrolman Chambers stopped appellant pursuant to a radio broadcast indicating appellant was involved in a theft. Patrolman Chambers' statement that he was concerned for his safety is supported by the fact that he requested that another cruiser assist him with the stop of appellant's van. Tr. Suppression Hrng., Oct. 19, 1998, at 11. Accordingly, Patrolman Chambers had a legitimate reason to conduct the pat-down search.
Appellant next maintains, under his First Assignment of Error, that the removal of his hat exceeded the scope of a Terry frisk and therefore, the rock of cocaine found in his hat must be suppressed. In the Evans case, the Ohio Supreme Court explained that: Under Terry and its progeny, the police may search only for weapons when conducting a pat-down of the suspect. "A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. * * * Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. * * *." Terry,392 U.S. at 25-6, 88 S.Ct. at 1882, 20 L.Ed. at 908. * * * Evans at 414.
We find the search of appellant's hat was within the scope permitted by Terry because the removal of the hat was necessary for the discovery of weapons which appellant could have used to harm Patrolman Chambers. At the suppression hearing, Patrolman Chambers testified to the following concerning the removal of appellant's hat: * * * In the course of patting him down, I asked Mr. Featherston if he had any weapons such as razor blades or anything sharp underneath the hat that he was wearing on his head. He said no, he didn't, and I advised him that I was going to go ahead and remove his hat and check for any weapons. * * *. Tr. Suppression Hrng, Oct. 19, 1998, at 13.
Patrolman Chambers explained that based on personal experience he was concerned appellant may have a weapon hidden inside his hat because in the past, he has encountered individuals who have had razor blades sewn in between the outer part of the hat and the sweatband. Id. at 27. Patrolman Chambers admitted that he did not pat-down appellant's hat prior to removing it from his head. Id. at 27-28. However, Patrolman Chambers testified that he informed appellant that he intended to remove his hat and appellant did not object thereby consenting to its removal. The trial court concluded the pat-down of appellant's hat would have been unreasonable because there is no practical way to pat-down a hat worn on a person's head. Judgment Entry, Dec. 15, 1998, at 3. The record does not indicate the type of hat appellant was wearing, however, it appears from Patrolman Chambers' testimony, that appellant was wearing a baseball hat as opposed to a stocking cap. We find, due to the nature of appellant's hat, that a pat-down search would not have been practical. Baseball hats are made of a stiff material that holds a shape. It would be difficult for an officer to pat-down the outside of a baseball hat and determine whether a razor blade is sewn in between the outer part of the hat and sweatband. The only way to safely make this determination is to remove the hat and inspect it. However, a stocking cap is a knitted cap that fits the shape of a person's head. It would be easier for a police officer to pat-down this type of hat as opposed to a baseball hat. Based on the nature of appellant's hat, the fact that Patrolman Chambers informed appellant that he was going to remove his hat and appellant's consent to the removal, we find the pat-down search did not exceed the scope of the search permitted under Terry. Appellant's First Assignment of Error is overruled.
 II
In his Second Assignment of Error, appellant contends he was in custody at the time he made an incriminating statement and the trial court should have suppressed the statement because Patrolman Chambers had not informed him of his Miranda rights. We disagree. Miranda describes custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda at 444. Custody encompasses a formal arrest or restraint of movement of the degree associated with a formal arrest. California v. Beheler (1983), 463 U.S. 1121,1125. Under this standard, a suspect is in custody if he or she is formally placed under arrest prior to the interrogation. In non-arrest circumstances, the restraint on the suspect's freedom of movement must be significant in order to constitute custody for purposes of Miranda. The United States Supreme Court has defined "interrogation" to include "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Footnotes omitted.) Rhode Island v. Innis (1980), 446 U.S. 291, 301. Miranda warnings are required when a suspect in custody is subjected to express questioning or its functional equivalent. Id. at 300-301. Although appellant was not under arrest at the time Patrolman Chambers asked appellant what was in his hat, Patrolman Chambers testified, at the suppression hearing, that had appellant attempted to turn and leave, after Patrolman Chambers asked him what was in his hat, he would have stopped him. Tr. Suppression Hrng., Oct. 19, 1998, at 29. Therefore, for Miranda purposes, we find appellant was in custody. The next issue we must address is whether Patrolman Chambers' question concerning what was in his hat was an "interrogation" for Miranda purposes. Patrolman Chambers admitted that he thought the object was cocaine prior to asking appellant the question. Id. Clearly, Patrolman Chambers knew that if appellant answered his question honestly, appellant would provide an incriminating response. Based on the above, we find appellant was in custody at the time Patrolman Chambers questioned him about the substance in his hat. We further find Patrolman Chambers' question was an "interrogation" as defined by the United States Supreme Court's decision in Rhode Island v. Innis. Therefore, Patrolman Chambers should have read appellant his Miranda rights prior to questioning him about the substance in his hat. However, we find this error to be harmless because even if we suppress appellant's statement that the substance in his hat was cocaine, we previously concluded Patrolman Chambers discovered the cocaine during a valid Terry pat-down search. Patrolman Chambers testified that BCI tested the substance and concluded that it was cocaine. Tr. Suppression Hrng., Oct. 19, 1998, at 15. Therefore, even if we exclude appellant's statement, there is still sufficient evidence upon which to find appellant guilty. Cf. State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus. Appellant's Second Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Fairfield County, Ohio, is hereby affirmed.
Wise, P.J. Farmer, J., and Edwards, J., concur.