[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
In six assignments of error, defendant-appellant Tracey Harris[1]
challenges her two convictions for endangering children, in violation of R.C. 2919.22(A). We overrule all the assignments of error and affirm the judgment of the trial court.
In appellant's first, second, and third assignments of error, which we address collectively, she challenges the sufficiency and the weight of the evidence, and the trial court's decision to overrule her Crim.R. 29(A) motion for acquittal. To reverse on a sufficiency-of-the-evidence claim, an appellate court must review the record in a light most favorable to the state and be convinced that a rational trier of fact could not have concluded that the elements of the crimes had been established beyond a reasonable doubt.[2] The relevant inquiry for reviewing the trial court's denial of a Crim.R. 29 motion for acquittal is whether, viewing the evidence in the light most favorable to the state, reasonable minds would have reached different conclusions as to whether each material element of the charged crime had been proved beyond a reasonable doubt.[3] To reverse on a manifest-weight-of-the-evidence claim, an appellate must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[4]
The child-endangering statute, R.C. 2919.22(A), provides that "no person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." The state must prove that the defendant acted recklessly,[5] which R.C. 2901.22(C) defines as follows:
 [W]hen, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
 The term "substantial risk" is defined in R.C. 2901.01(A)(8) as a "strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."
We have previously held that a mother created a substantial risk to the safety of her child and violated a duty of care, protection, and support when, after her minor daughter told her that the mother's live-in boyfriend had raped her on more than one occasion, the mother failed to remove either the daughter or the boyfriend from the household. We affirmed the mother's conviction as not being either against the manifest weight of the evidence or based on insufficient evidence.[6]
In the case sub judice, an investigation of Tracey Harris commenced when Mary Holbrook, employed as a licensed social worker with the Hamilton County Department of Human Services in the Sex Abuse Vice Unit received a referral from 241-KIDS on May 25, 2000, that Tracey's children were at risk due to a Sean Harris living in Tracey Harris's home. Holbrook testified that Tracey Harris denied that Sean Harris was living in her home.
Tracey Harris testified at trial that during July 1996, about a year and a half after Sean Harris had moved in with her and prior to their marriage, when she was known as Tracey Brima, she saw him come out of the bedroom of her two girls and confronted him as to what he had been doing in their bedroom. He admitted to her that he had touched her daughter B. inappropriately. She did not call the police. She testified that after after B. had told her several weeks later that Sean Harris had touched her, Tracey Brima still did not call the police, but instead called the Department of Human Services, who in turn notified the police, to get counseling for B.'s mental health. Brima did not have Sean Harris move out of the house. Holbrook testified at Tracey Harris's trial that B. continued in counseling at the direction of her department.
Sean Harris testified that, after entering guilty pleas to two charges of gross sexual imposition of Tracey Brima's daughters B. and D., he was found guilty. Sean Harris testified that he had touched B. inappropriately in July and August and had done the same to D. in February 1996. He testified that he had been adjudicated a sexual predator in November 1997, and that in January 1998 he had been released from prison, where Tracey had regularly visited him. He testified that he had entered a guilty plea and was found guilty of failure to register subsequent to his sexual- predator adjudication. Sergeant Anthony Carter testified that, at the time of the offenses, B. was six-years old and D. was four-years old. In December 1999, after receiving a call and conducting an investigation, Aretha Cobbins of the Adult Parole Authority came to believe that Sean was residing with Tracey Harris at her apartment.
Tracey Harris testified that Sean had suggested that she marry him, which they did the day before he was arrested for gross sexual imposition against her daughters. Tracey Harris testified that Sean Harris had spent a little less than two years in prison and that she had visited him while he was incarcerated. She testified that she knew he had been adjudicated a sexual predator. Although she did not want him to register under her address, she resumed a relationship with him in July of 1998, after his release from prison in January of 1998. She testified that she had called his probation officer subsequent to his release to learn of any restrictions with regard to Sean's being with her children. She learned that "the only restriction was that he was not to be left alone with the children." She testified that she knew Sean was to maintain a separate residence. But she also testified that he had spent a substantial amount of time at her apartment subsequent to his release. She added that there were occasions when Sean had been alone with the two girls.
When the evidence is viewed in a light most favorable to the state, we conclude that it was sufficient evidence to warrant a rational trier of fact in finding beyond a reasonable doubt that the appellant had committed the offenses of endangering children under R.C. 2919.22(A). Accordingly, we overrule appellant's first assignment of error. Similarly, we find no error in the trial court's denial of appellant's Crim.R. 29 motion for acquittal. Accordingly, we overrule appellant's third assignment of error. Finally, after reviewing the record, we hold that, in weighing the evidence, the trier of fact did not lose its way in resolving conflicts in the evidence and create a manifest miscarriage of justice. Accordingly, appellant's second assignment of error is overruled.
In appellant's fourth assignment of error, she challenges the admission of evidence that her children had been removed from her home by the department of human services, and that her husband had been adjudicated a sexual predator and incarcerated for failure to register subsequent to that adjudication. In her view, such evidence was irrelevant and so prejudicial that she was denied her right to a fair trial. But, in her brief, she states that "[t]he fact that Harris had previously molested the girls was probably relevant, given the fact that the state was required to show a substantial risk." We agree. Moreover, the evidence was that her daughters had only been temporarily removed because an investigation by the department of human services was ongoing.
The Ohio Supreme Court has stated, "The trial court has broad discretion in the admission and exclusion of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.[7] Further, "[w]here a particular fact tends to render probable a material proposition in issue then that fact is relevant."[8] Since a reasonable basis existed to hold that the evidence at issue was relevant, the ultimate decision on admissibility rested in the trial court's broad discretion.[9] We conclude that the trial court did not abuse its discretion in the admission of the evidence, and that the appellant was not deprived of a fair trial. Accordingly, appellant's fourth assignment of error is overruled.
In appellant's fifth assignment of error, she claims that the prosecutor improperly appealed to the jury's sympathy for the victims by asking the jurors, during closing argument, to place themselves in the place of the child victims. The test for whether prosecutorial misconduct may serve as the basis for reversing a conviction is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused.[10] The linchpin of the analysis is "whether the conduct complained of deprived the defendant of a fair trial."[11]
In this case, the appeal to sympathy was improper. Our next step is to determine whether the appellant suffered such prejudice that she was denied a fair trial. The prosecutor's remark should be assessed within the context of the entire case, and more particularly the entire closing argument, to determine whether it was prejudicial.[12] After reviewing the record, we cannot say that the single improper comment so prejudiced the jury that appellant was denied a fair trial. Accordingly, appellant's fifth assignment of error is overruled.
In appellant's sixth assignment of error, she claims that the trial court erred in admitting the expert testimony of a psychologist, Dr. Bassman. She claims that the testimony was admitted for the purpose of establishing that she should have known of the substantial risk to her children when she permitted her husband to be with them. We disagree that that was the purpose for the presentation of the expert's testimony. But, even if the psychologist's testimony was improperly admitted, it was harmless error based on the remaining evidence admitted at trial which, standing alone, constituted overwhelming proof of appellant's guilt.[13]
We conclude that appellant suffered no prejudice from the admission of the expert testimony that would require reversal of her convictions. Accordingly, appellant's sixth assignment of error is overruled.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Sundermann, P.J., Winkler and Shannon, JJ.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
[1] The spelling of defendant-appellant's first name appears interchangeably as Tracey and Tracy throughout the record.
[2] See State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541, 546; State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781.
[3] See State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus; State v. Bay (1998), 130 Ohio App.3d 772, 774, 721 N.E.2d 421,422.
[4] See State v. Thompkins, supra, at 387, 678 N.E.2d at 546-547; Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720.
[5] See State v. McGee (1997), 79 Ohio St.3d 193, 195, 680 N.E.2d 975,977.
[6] See State v. Wardlow (1985), 20 Ohio App.3d 1, 3-4, 484 N.E.2d 276,279.
[7] State v. Hymore (1967), 9 Ohio St.2d 122, 128, 224 N.E.2d 126,130.
[8] Id.
[9] See State v. Sanders (2001), 92 Ohio St.3d 245, 257, 750 N.E.2d 90,111 (evidence of assaults and murders not committed by defendant relevant and admissible).
[10] See State v. Bey (1999), 85 Ohio St.3d 487, 494, 709 N.E.2d 484,493; State v. Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293,300.
[11] See State v. Fears (1999), 86 Ohio St.3d 329, 332, 715 N.E.2d 136,143, citing State v. Apanovitch (1987), 33 Ohio St.3d 19, 24,514 N.E.2d 394, 400; State v. Ingels (Dec. 3, 1999), Hamilton App. No. C-980674, unreported.
[12] See State v. Keenan (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203,209.
[13] See State v. Williams (1983), 6 Ohio St.3d 281, 452 N.E.2d 1323, paragraph six of the syllabus; State v. Prade (2000), 139 Ohio App.3d 676,694, 745 N.E.2d 475, 489.