JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Travis Sims appeals from his conviction after a jury trial for aggravated robbery with a firearm specification.
{¶ 2} In asserting his conviction should be reversed, appellant presents the following arguments: the trial court erred during the voirdire of prospective jurors by speaking to the jurors ex parte; the trial court thereafter committed further error by failing either to provide defense counsel with an additional opportunity to question the jurors or to dismiss one of the jurors for cause; the trial court improperly restricted appellant's direct testimony; the trial court improperly instructed the jury regarding the stipulation entered into by the parties and regarding the element of "purpose"; improper comments by the prosecutor during closing argument tainted the fairness of appellant's trial; defense counsel provided ineffective assistance; and, finally, appellant's right to appeal his conviction is compromised by the trial court's failure to include in the record the written instructions it provided to the jury.
{¶ 3} This court thoroughly has examined the record in light of appellant's arguments and determines his first three have merit. Since they are dispositive of appellant's appeal, appellant's conviction is reversed and this case is remanded for further proceedings.
{¶ 4} Appellant's conviction results from an incident that occurred late in the evening of December 28, 2000. The victim, Melvin Branham, home from college on his "winter break,"[1] had planned to accompany a high-school acquaintance, Jennifer Dryja, as she visited a mutual friend. Dryja drove to Branham's home to "pick [him] up," then proceeded to "Pinky's night club"[2] to retrieve her colleague Robin Gamble. Dryja at that time informed Branham she first would have to drive to the house in which she currently stayed in order to obtain Robin's purse for her before proceeding to their friend's home.
{¶ 5} Dryja arrived at her house, located at 18900 Preston Road in Warrensville Heights, shortly before midnight. She went inside, leaving Branham in the front passenger seat and Gamble in the rear driver's-side seat. Branham and Gamble had been conversing for a short time when Branham noticed a "green Saab" turned into the driveway behind them.
{¶ 6} Branham saw a man, later identified as appellant, exit the passenger side of the vehicle. Despite the winter weather, appellant wore only "jeans . . . with a gray T-shirt." Appellant "looked upset and he stormed in[to] the house really fast."
{¶ 7} After a few minutes, appellant reemerged. He approached Dryja's vehicle, opened the front driver's-side door, saw Branham, shut the door, then opened the rear door. Appellant at that point took Gamble by the neck and "snatched her" out of the vehicle. Throwing her against the side of the house, appellant demanded to know "Why the F" she was there. He shook her and "punched her a couple of times in her stomach."
{¶ 8} Branham's protests at this behavior caused appellant to order him to "shut up" and to obtain a gun from his waistband. Branham saw appellant push the gun into Gamble's stomach. Appellant put his free hand into Gamble's pockets to take money out, then turned back to Branham.
{¶ 9} Appellant asked Branham if he "had any money." Although Branham denied it, appellant told him to "get out." Branham refused to obey until appellant circled in front of Dryja's vehicle. Once they faced each other, appellant placed the gun to Branham's stomach, "patted [him] down," and found his wallet. Appellant removed the fifty dollars Branham had been paid that day by his employer before throwing the wallet to the ground.
{¶ 10} Dryja at that point had exited the house. Appellant left Branham in order to take Dryja "by the head." He "slammed her head again[st] the roof of the car" once, "backed up and told us that we all should get the F out of his drive." Appellant fired his weapon "three or four times" into the air to emphasize his words.
{¶ 11} Once Branham, Dryja and Gamble could manage to reenter Dryja's vehicle, appellant went back to the Saab, which exited the driveway and left. Thereafter, Branham was able to convince the two women to proceed to the police station to report the incident.
{¶ 12} Later that morning, at approximately 9:00 a.m., Warrensville Heights police detectives Fossett and Clark arrived at the Preston Road address. Appellant answered the door with his "handgun in his hand." When he observed the identities of his callers, he placed the weapon on the floor before exiting the house. After being informed of his rights but prior to being told of the reason for his arrest, appellant volunteered to the detectives that "he didn't do anything; he was robbed." He explained that he had come to the door with his weapon "to protect himself because he didn't know who [the detectives] were," but "figured they were somebody coming back to get him from the incident that occurred earlier" that morning. A few days later, however, appellant informed Fossett that "he owned [an] escort service and . . . the girls worked for him; he was just taking what was his."
{¶ 13} Appellant subsequently was indicted on three counts of aggravated robbery, R.C. 2911.01. Each count contained both a one year and a three year firearm specification. Count one named Jennifer Dryja as the victim, count two named Robin Gamble as the victim, and count three named Melvin Branham as the victim. Appellant pleaded not guilty to the charges and was assigned counsel to represent him.
{¶ 14} Appellant's case eventually proceeded to a jury trial. Just before voir dire of the prospective jurors began, the prosecutor requested the dismissal of count one since Dryja had moved out of state. The parties further informed the trial court that they had stipulated to the "BCI report" concerning the operability of appellant's firearm. Voirdire then followed.
{¶ 15} At the conclusion of voir dire, both parties were satisfied none of the first twelve persons needed to be excused for cause; the proceedings thereupon concluded for the day.
{¶ 16} The next morning, however, the trial court placed upon the record the fact that juror number 1 had "not [been] able to remain;" therefore, a new prospective juror was interviewed. At the conclusion of the interview, defense counsel exercised his first peremptory challenge to excuse the replacement.
{¶ 17} On the basis that the second prospective juror was a retired police officer who stated he could not maintain his neutrality, the trial court excused him for cause. Subsequently, defense counsel exercised his second peremptory challenge on juror number 6. Defense counsel's ensuing interview with the replacement for juror number 6 was interrupted by the trial court when counsel began to mention "legal concepts;" however, counsel eventually exercised his third peremptory challenge on juror number 3.
{¶ 18} At that point in the proceedings, appellant spoke up to address the trial court with the question, "Your Honor, can I request another attorney?" The trial court admonished appellant to wait until replacement juror number 3 was interviewed.
{¶ 19} The trial court thereafter spoke with appellant outside of the presence of the prospective jurors. When appellant complained he didn't think counsel either believed or respected him, the trial court explained counsel was doing his best to represent appellant and appellant's outburst was unhelpful to his case. Appellant subsided.
{¶ 20} The prosecutor thereupon expressed some concern about the possible affect of appellant's outburst upon the prospective jurors. The trial court considered the matter briefly, then stated to the parties, "You know, I think I'll go back [to speak to them]. Would you mind if I did this in chambers?" Defense counsel made no response before the prosecutor requested the trial court speak to the jurors in the jury room with the court reporter present; the trial court acceded to this request.
{¶ 21} During the trial court's ensuing discussion with the jurors, it asked if the tension between appellant and his attorney "will influence your deliberations." Replacement juror number 6 spoke up to declare defense counsel was "a jerk." She expressed some dissatisfaction with the way defense counsel had conducted his interview of her. The remainder of the jurors, however, assured the trial court they could "focus on the evidence."
{¶ 22} When the trial court had resumed the proceedings, defense counsel used his third peremptory challenge to excuse replacement juror number 6. Thereafter, the parties expressed their satisfaction with the panel and the state's presentation of the evidence commenced.
{¶ 23} The state presented the testimony of Branham and Fossett, and introduced as an exhibit the report from the Ohio Bureau of Investigation that indicated appellant's weapon was operable. Following the trial court's denial of his motions for acquittal, appellant presented the testimony of his girlfriend Lauren Bryant and testified in his own behalf.
{¶ 24} The jury ultimately returned a verdict of not guilty with regard to the charge of aggravated robbery of Robin Gamble, but guilty of the aggravated robbery of Melvin Branham with firearm specifications. The trial court ordered a presentence investigation and report before sentencing appellant to terms of incarceration of three years on the firearm specification to be served prior to and consecutive with three years for the principal offense.
{¶ 25} Appellant presents nine assignments of error for review.
{¶ 26} Appellant's first, second, and third assignments of error state:
 THE TRIAL COURT ERRED WHEN IT CONDUCTED AN EX PARTE VOIR DIRE OF THE JURY OUTSIDE THE PRESENCE OF EITHER PARTY, IN VIOLATION OF MR. SIMS' FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO CONFRONTATION AND TO COUNSEL, AND IN VIOLATION OF CRIM.R. 43.
 THE TRIAL COURT ERRED WHEN IT FAILED TO PROVIDE THE DEFENSE WITH THE OPPORTUNITY TO CONDUCT FURTHER VOIR DIRE OF ALL VENIRE PERSONS AFTER THE TRIAL COURT'S EX PARTE VOIR DIRE OF THE VENIRE.
 THE TRIAL COURT ERRED WHEN IT FAILED TO EXCUSE JUROR NO. 6 FOR CAUSE AFTER THE JUROR HAD BEEN UNABLE TO STATE THAT SHE COULD SET ASIDE HER NEGATIVE OPINION OF DEFENSE COUNSEL IN CONSIDERING THE EVIDENCE IN THE CASE.
{¶ 27} Appellant argues events that occurred prior to the presentation of the state's case compromised both his constitutional rights and his Crim.R. 43 right to be present at all stages of the proceedings. Appellant's argument is persuasive.
{¶ 28} Appellant first contends the trial court acted improperly when it questioned the prospective jurors without the parties present concerning appellant's momentary dissatisfaction with defense counsel. Appellant further contends the trial court compounded its error by failing either to provide him with an additional opportunity to examine the jurors on that issue or to excuse one prospective juror for cause.
{¶ 29} A review of the record demonstrates appellant made no objection to the trial court's actions at the time they occurred. It is well-settled that appellant's omission, ordinarily, constitutes a waiver of his arguments on appeal. State v. Williams (1977), 51 Ohio St.2d 112.
{¶ 30} In an attempt to overcome the foregoing rule of law, appellant asserts that the trial court's actions amounted to "plain error." This doctrine is to be applied with the utmost caution and invoked only under exceptional circumstances in order to prevent a manifest miscarriage of justice. State v. Cooperrider (1983),4 Ohio St.3d 226, 227. Moreover, to constitute plain error, it must be obvious that "but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12; see also, State v. Long (1978), 53 Ohio St.2d 91, paragraph 3 of the syllabus. This court concludes the trial court's actions in this case fit within the foregoing constraints.
{¶ 31} The record reflects the trial court's ex parte questions of the prospective jurors as to their ability to remain neutral took place outside the presence of appellant. Error occurs when a trial court fails to ensure a criminal defendant's presence at an in camera interview intended to assess the jurors' fairness and impartiality during voirdire. State v. Williams (1983), 6 Ohio St.3d 281, paragraph three of the syllabus. The criminal defendant's right to be present at every stage of the proceedings against him is one of constitutional dimension. Id., at 286.
{¶ 32} In order to be deemed nonprejudicial, error of constitutional stature must be harmless beyond a reasonable doubt. Id. As regards a defendant's constitutional right to be present at all stages of his trial, prejudicial error exists where a fair and just hearing has been thwarted by his absence. Id. This case presents a situation in which it cannot be presumed the error that occurred was harmless beyond a reasonable doubt.
{¶ 33} First, appellant's rights to due process and to counsel both were compromised by the trial court's failure to invite defense counsel to the interview of the prospective jurors. Defense counsel thus was unable actively to participate in the conference in order to assess for himself the possible prejudice against him manifested by replacement juror number 6.
{¶ 34} Second, in view of the strongly negative opinion of defense counsel expressed by replacement juror number 6 during the trial court's interview, appellant's contention the trial court should have excused that juror for cause has substance. The trial court's decision to accept a prospective juror's pledge she would try to be impartial is entitled to deference. State v. Williams (1997), 79 Ohio St.3d 1, 8. However, if the defense peremptorily excuses the biased prospective juror, but it thereby exhausts its peremptory challenges before the full jury is seated, the erroneous denial of a challenge for cause may be prejudicial. Id.
{¶ 35} In this case, the record reflects that prior to the trial court's private interview of the jurors, defense counsel already during his questioning of replacement juror number 6 had created in her an obvious distaste for his style. Subsequently, replacement juror number 6 clearly expressed to the trial court that distaste, stating baldly her belief he was "a jerk." In response to the trial court's inquiry as to how her belief would affect her during trial, moreover, the potential juror also indicated only that she would "work on" being fair.
{¶ 36} Although the trial court evaluated these statements and apparently found them to be credible, because of the trial court's decision to conduct the interview ex parte, neither defense counsel nor appellant was afforded this opportunity. Defense counsel subsequently used a peremptory challenge to remove replacement juror number 6. Had the trial court advised counsel of the prospective juror's negative comments about him, however, counsel may have requested the trial court to excuse replacement juror number 6 for cause and thus used his remaining peremptory challenge differently.
{¶ 37} Since the record indicates the trial court's handling of the incident compromised appellant's constitutional rights an constituted substantial error, it cannot be stated the error was harmless beyond a reasonable doubt. Cf., State v. Williams, supra at 286-287. Based upon the foregoing, appellant's first, second and third assignments of error, accordingly, are sustained. The disposition of appellant's first, second and third assignments of error renders the others he presents moot.[3]
App.R. 12(A)(1)(c).
{¶ 38} Appellant's conviction is reversed. This case is remanded for further proceedings.
{¶ 39} This cause is reversed and remanded for further proceedings consistent with this opinion.
{¶ 40} It is, therefore, considered that said appellant recover of said appellee his costs herein.
{¶ 41} It is ordered that a special mandate be sent to said court to carry this judgment into execution.
{¶ 42} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, J. and ANN DYKE, J. CONCUR
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] Branham testified this establishment was a "strip club."
[3] Appellant's fourth through ninth assignments of error stated
 THE TRIAL COURT VIOLATED MR. SIMS' FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO TRIAL BY JURY AND DUE PROCESS WHEN IT DIRECTED THE JURY TO FIND THAT THE FIREARM WAS OPERABLE.
 THE PROSECUTION VIOLATED MR. SIMS' CONSTITUTIONAL RIGHTS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN IT ENGAGED IN IMPROPER CLOSING ARGUMENT THAT WAS DESIGNED TO APPEAL TO THE PASSIONS AND PREJUDICES OF THE JURY AND THAT URGED THE JURY TO DRAW CONCLUSIONS NOT BASED ON THE EVIDENCE PRESENTED AT TRIAL.
 THE TRIAL COURT ERRED WHEN IT DID NOT ALLOW MR. SIMS TO TESTIFY THAT BRANHAM STATED THAT HE WAS OFFERING TO PAY MR. SIMS THE $50 AS SETTLEMENT OF THE ONGOING ARGUMENT BETWEEN MR. SIMS AND GAMBLE.
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT INSTRUCTED THE JURY THAT MR. SIMS DID NOT NECESSARILY HAVE TO HAVE A SPECIFIC INTENT TO COMMIT A THEFT OFFENSE IN ORDER TO BE GUILTY OF AGGRAVATED ROBBERY.
 MR. SIMS WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION.
 THE FAILURE TO INCLUDE THE WRITTEN JURY INSTRUCTIONS IN THE RECORD DEPRIVED MR. SIMS OF HIS RIGHT TO DUE PROCESS BY IMPAIRING HIS RIGHT TO AN EFFECTIVE FIRST APPEAL AS OF RIGHT.