DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, in which the trial court accepted jury verdicts finding appellant, Derek Marshall, guilty of burglary, felonious assault and aggravated burglary.
 {¶ 2} On appeal, appellant sets forth the following three assignments of error:
 {¶ 3} "I. The court erred in barring Appellant from the courtroom throughout his jury trial.
 {¶ 4} "II. The court erred in denying Appellant's request for different appointed counsel.
 {¶ 5} "III. The court erred in failing to provide an opportunity to request recusal when Appellant implicitly expressed his concern about being tried in this court, and the trial judge is the spouse of the county prosecutor."
 {¶ 6} On October 2, 2000, a man forced his way into Lisa Powell's apartment. After gaining entrance to the apartment, the man beat and kicked Powell. When she escaped from the apartment, the man followed Powell across the street and kicked her again. Eventually, a neighbor let Powell into her apartment to call police. However, the man followed Powell, forced his way into the neighbor's home and hit Powell over the head with a broomstick. The assailant left when Powell and the neighbor called police.
 {¶ 7} Appellant was identified as Powell's attacker and was subsequently charged with aggravated burglary, felonious assault, and burglary. On October 17, 2000, appellant pled not guilty to all of the charges against him. After finding that appellant was indigent, the court appointed an attorney to defend appellant.
 {¶ 8} On November 16, 2000, appellant appeared in court with his court-appointed attorney. Counsel asked for and was granted a continuance of the trial date until November 28, 2000, so that she could contact several prospective witnesses. After the continuance was granted, counsel indicated that she and appellant had discussed the prosecution's offer of a plea bargain; however, appellant rejected the offer. At that point, the following exchange took place between appellant, appointed counsel, and the court:
 {¶ 9} "[Appellant]: Excuse me, Judge. I'd like to say something. Since I feel that this lawyer is not in the best of my interest and I feel that justice cannot be served for me and the best of my interest, I would like to have a new attorney.
 {¶ 10} "The Court: Well, can you afford an attorney?
 {¶ 11} "[Appellant]: No, I cannot.
 {¶ 12} "The Court: Ms. Jennings, do you think the relationship between you and Mr. Marshall has been broken down to the point you could not represent him in this case?
 {¶ 13} "[Counsel]: I don't believe so, Your Honor. I explained to him yesterday when I talked to him at the jail when I was explaining the plea agreement to him, I told him as his attorney I had a duty to convey any offers that were made by the prosecutor's office to him, that it was his choice to make, that he had a right to a trial, and if he wanted to go to trial we would proceed to trial.
 {¶ 14} "The Court: Mr. Marshall, I don't change —
 {¶ 15} "[Appellant]: I asked he — I told her, I said if you feel that you cannot represent me to the best of your ability, really fight for me, if you feel that for the people who accuse me of something that you believe what they say and not believe what I say, not really fight for me, I say you cannot defend me. I said I rather for — to have another attorney. Ever since I been speaking to this attorney, this attorney be talking about, you know, things on they behalf, coming at me questioning me like I'm the guilty party, but I never had nobody come to me and talk to me like, you know, like they believe me. You see what I'm saying? Like they have more emotions and feeling for the other person, not for me. You see what I'm saying? That's why I'm asking for another attorney who will believe and who will fight. I had one who believed in me when I first — the sympathy, they fought for me and I was acquitted, even when things were severe. You see what I'm saying?
 {¶ 16} "The Court: Mr. Marshall, I don't know any of the facts in this case. All I know is what's in front of me. These are pretty serious charges, aggravated burglary, felonious assault and burglary. I've had many, many cases with Ms. Jennings. She does a very fine job in Court. Sometimes what an attorney advises you, it may be inconsistent with what you think is in your best interest. She indicated what the plea offer was, that you have declined, which is fine, and that's why we have juries and that's why we have attorneys, and I'm sure she'll attempt to contact these witnesses that you gave her the names of, and we'll have a trial in a like —
 {¶ 17} "[Appellant]: I'd like to have a new attorney.
 {¶ 18} "[Counsel]: The Court knows that I also have a duty to explain the evidence to my client that is presented to me through the prosecutor's office in discovery, and perhaps Mr. Marshall is misinterpreting my discussion of that evidence as my being for the victim in this case. I've explained to him that it's his right to have a trial and I will do everything and give him the best defense that I know how to do.
 {¶ 19} "The Court: The oral request for a removal of counsel will be denied. The matter will be continued — Mr. Marshall, if you can afford —
 {¶ 20} "[Appellant}: Ain't no sense in me coming to Court. I ask for justice. I ask —
 {¶ 21} "The Court: Hey, Mr. Marshall, I would indicate to you —
 {¶ 22} "[Appellant]: This is my life. I don't hear nothing. This is my life.
 {¶ 23} "The Court: Cuff him and take him out of the room. You'll be in this courtroom in the back of the —
 {¶ 24} "[Appellant]: Ten years, man. I going back to do no more time like that.
 {¶ 25} "The Court: Mr. Marshall, all I can assure you, you will not be in the courtroom during this trial. Thank you very much for your comments."
 {¶ 26} At the close of the preceding exchange, appellant was escorted from the courtroom by sheriff's deputies and the pretrial was concluded.
 {¶ 27} Appellant's jury trial was held on November 28, 2000. At the outset, the trial court granted appellant's motion to suppress certain statements made by appellant during his interrogation by police. The motion was not contested by the prosecution. Potential jurors were then brought into the courtroom. After making some preliminary comments to the prospective jurors, the court introduced the parties' attorneys and told the jury that appellant would be in a small anteroom for the duration of the trial.
 {¶ 28} The trial court and counsel for both parties then asked questions of prospective jurors. Later, following voir dire, but before the final selection of jurors, defense counsel made the following statement outside the hearing of the potential jurors:
 {¶ 29} "I'd like to indicate for the record that I went into the room to ask Derek Marshall whether or not he had any objections to the jurors and if there was anyone that he wanted me to excuse, and he did not answer my questions, and so I took that to mean he was satisfied with the jurors as they were."
 {¶ 30} After the jury was empaneled, counsel presented opening statements. Thereafter, the state called two witnesses. The first witness, Lisa Powell, testified that Derek Marshall attacked her in her own apartment, then followed her across the street to a neighbor's house where he beat her again with a broomstick. At the close of Powell's testimony, when she was asked to identify her attacker in court, defense counsel asked for a bench conference, during which the following discussion was held:
 {¶ 31} "[Counsel]: The last time I saw Derek he was handcuffed in the chair. I would ask that if at all possible that that not happened [sic] during the identification.
 {¶ 32} "The Court: Is he just sitting in the chair?
 {¶ 33} "Office Zaborowski: He's sitting with his hands behind his back, with his hand behind. I'll take a chance, because he's going to go off.
 {¶ 34} "The Court: I went back to the room, and they were having an awful time getting him in the chair. It was like three different Court security officers. He's caused so many problems this morning, I'm not going to take a chance. I think through the window they will only be able to see his face. They won't be able to see the handcuffs.
 {¶ 35} "Office Zaborowski: It will appear his hands are behind his back, though.
 {¶ 36} "The Court: Turn the lights on."
 {¶ 37} At that point, Powell walked to the back of the courtroom where defendant was sequestered, looked through a lighted glass window and identified appellant as her attacker.
 {¶ 38} The second state's witness, Jeanne Dauer, testified that she let Powell into her home after hearing someone crying outside. She further testified that a man followed Powell into Dauer's home and beat her with a broomstick. Dauer could not identify appellant as Powell's attacker.
 {¶ 39} At the close of all the evidence, defense counsel moved for acquittal pursuant to Crim.R. 29(A), which the court denied. Defense counsel then stated that she had no witnesses to testify on appellant's behalf, and the defense rested. The motion for acquittal was then renewed and denied, after which counsel for both sides presented closing arguments.
 {¶ 40} After receiving instructions from the court, the jury retired for deliberations. At that point, defense counsel made the following statement on the record:
 {¶ 41} "I know this is out of sequence. I want to state for the record. When we took one of the breaks, I went back in the anteroom and talked to Derek Marshall and asked him if there was anything else he wanted me to present, and he did not answer me. I also discussed with him or I asked him if he wanted to testify. He did not answer me. I told him that I thought that he should not testify. He didn't respond, and that was the end of the conversation." Shortly thereafter, the jury returned a verdict of guilty to the charges of aggravated burglary, felonious assault, and burglary.
 {¶ 42} On November 30, 2000, a sentencing hearing was held, at which the court stated:
 {¶ 43} "I would further indicate for the record that on two prior occasions the Court has had some problems with Mr. Marshall as far as his conduct in the courtroom, including the fact that on Tuesday, which is the first time in ten years that I've been a Judge that I had to put someone in the obstreperous defendant's room for purposes of the trial. I don't take that lightly, because I think it's a constitutional right of the defendant to be present for the purpose of the trial and to face the jurors.
 {¶ 44} "In this particular case, because of Mr. Marshall's conduct, it required the Court to exclude him physically from the courtroom even though he was able to see and hear the proceedings that were going on.
 {¶ 45} "I would also indicate for the record that after I removed Mr. Marshall from the courtroom, that I made an attempt to go to the obstreperous defendant's room to advise Mr. Marshall that I would let him back into the courtroom if he got himself under control. He was kicking and fighting so hard with the Court security officers at the time I felt my comments would fall on deaf ears."
 {¶ 46} Before sentencing, the court asked appellant if he wished to address the court, to which appellant replied:
 {¶ 47} "Yes. I had asked you for an attorney, one who would be for me, one who would have a case for me, prepare it. You denied that, and I feel that you was unfair towards me, so therefore, I feel that it wasn't no justice could be served. That's why I didn't participate in it. And I would ask a moment before you had your officers of the Court, you know, come get me, I was going to ask you to remove yourself so I could have a Judge who will grant me — make sure I had fair hearing, make sure justice was carried out for me. * * *"
 {¶ 48} The trial court then told appellant that he had a "significant problem controlling [his] emotions" and that the court gave appellant every opportunity to remain in the courtroom during the trial. The court further stated there was no indication that appointed counsel was unprepared or unwilling to represent appellant adequately at trial. The court further stated that appellant's lack of cooperation during the trial was not helpful to his defense, and that the evidence presented at trial was consistent with appellant's attitude and behavior in the courtroom.
 {¶ 49} After the above exchanges took place, the court sentenced appellant to serve concurrent sentences of six years for the aggravated burglary conviction and four years for the felonious assault conviction, to be followed by a one year sentence for the burglary conviction. A timely appeal was filed.
 {¶ 50} Appellant asserts in his first assignment of error that his constitutional rights were violated when the trial court barred him from the courtroom. In support thereof, appellant argues that the conduct for which he was barred occurred twelve days before the trial took place, his behavior involved no physical threats or profanity, and he was not given a chance to return to the courtroom on condition of good behavior.
 {¶ 51} The Fifth Amendment to the federal Constitution, which is enforceable against the states through the Fourteenth Amendment, states that a person may not be deprived "of life, liberty, or property, without due process of law." In addition, the Sixth Amendment provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." Accordingly, the United States Supreme Court has held that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." Illinois v.Allen (1970), 397 U.S. 337, 338.
 {¶ 52} In Ohio, this constitutional guarantee is embodied in Crim.R. 43(A), which mandates the presence of the defendant "at * * * every stage of the trial * * *," and Crim.R. 43(B), which provides that a hearing or trial may be conducted without the defendant's presence only if the "defendant's conduct in the courtroom is so disruptive that [the proceeding] cannot reasonably be conducted with his continued presence * * *."
 {¶ 53} In addition, the Ohio Supreme Court has held that a defendant's presence at his own trial is mandatory, "absent waiver of his rights or other extraordinary circumstances, at every stage of his trial." State v. Williams (1983), 6 Ohio St.3d 281, 286. Such a waiver may be found to exist on the basis of a defendant's disruptive behavior only if, after the defendant has been warned that his behavior may result in removal from the courtroom, "he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom."Allen, supra at 343. Even after a defendant is removed for disruptive or disrespectful behavior as outlined above, the court must give the defendant an opportunity to return if he promises to conduct himself in a proper manner. Id. at 344.
 {¶ 54} It is undisputed that the trial court excluded appellant from attending his own trial by placing him in a darkened, enclosed room at the back of the courtroom, behind a window. Appellant was only visible to the witnesses and the jury on two occasions, when the room was briefly lit so appellant could be identified by the witnesses. As set forth above, appellant did not communicate with his attorney during the trial, and she did not ask that appellant be brought back into the courtroom on condition of good behavior so that he could assist in his own defense.
 {¶ 55} The only clear reference in the record to appellant's conduct occurred in connection with the pretrial hearing on November 16, 2000. The record shows that appellant told the court he was dissatisfied with his representation and did not believe he could receive a fair trial. Although appellant's language indicates he was upset and argumentative when the court refused his request for new counsel, the record does not indicate that appellant physically threatened the court or gave any verbal indication of disrespect of the magnitude that would justify removal from the courtroom during the trial that commenced approximately two weeks later.
 {¶ 56} In addition, the court stated at the sentencing hearing that it could not inform appellant of the conditions of his return to the courtroom because he was "kicking and fighting" with the sheriff's deputies in the anteroom. However, the record is not clear as to whether this attempt was made before, during or after the trial. The court also indicated that appellant "caused problems" on the morning of the trial; however, the exact nature of such "problems" does not appear in the record.
 {¶ 57} A review of the entire record in this case reveals insufficient evidence to demonstrate that appellant's conduct was so disorderly, disruptive, and disrespectful of the court that his trial could not be carried on with him in the courtroom. Accordingly, on these facts, we find that the trial court excluded appellant from his own trial in violation of his constitutional rights.
 {¶ 58} However, our inquiry does not end with a finding that appellant's constitutional rights were violated. The United States Supreme Court has held that a defendant's conviction shall not be reversed on the basis of a constitutional error if the error is found to be harmless beyond a reasonable doubt. Coy v. Iowa (1988), 487 U.S. 1012,1021-1022, citing Chapman v. California (1967), 386 U.S. 18, 24. In making such a determination, a reviewing court may consider only evidence that was not produced in violation of the defendant's constitutional rights. State v. Lane (Mar. 19, 1998), 7th Dist. No. 94 B 34, citingCoy, supra.
 {¶ 59} In this case, appellant was unconstitutionally excluded from the courtroom for virtually the entire course of his trial. Therefore, none of the evidence produced by the prosecution may be considered by this court on appeal. Without that evidence, appellant could not have been convicted of the crimes with which he was charged. Such an error cannot reasonably be deemed harmless.
 {¶ 60} Upon consideration of the foregoing, this court finds that appellant's conviction was wrongfully obtained in violation of his rights to due process under the Fifth and Sixth Amendment to the federal Constitution and pursuant to Crim.R. 43. Appellant's first assignment of error is well-taken.
 {¶ 61} Upon consideration of our determination as to appellant's first assignment of error, we find appellant's second and third assignments of error moot and therefore not well-taken.
 {¶ 62} The judgment of the Lucas County Court of Common Pleas is hereby reversed and this case is remanded to the trial court for further proceedings consistent with this decision. Court costs of these proceedings are assessed to appellee, the state of Ohio.
JUDGMENT REVERSED.
Peter M. Handwork, J., James R. Sherck, J., and Mark L. Pietrykowski,P.J., CONCUR.