OPINION
{¶ 1} Defendant, Christopher Thompson, appeals from his conviction and sentence for aggravated robbery.
 {¶ 2} On the evening of April 15, 2006, Donald Nigh was at *Page 2 
his home located at 2729 Dorothy Lane in Springfield. Nigh was in bed watching television when he heard a knock at his front door. Nigh opened the door because he thought it was his neighbor. When Nigh opened the door, two African American males, both armed with guns, forced their way into Nigh's home. The intruders demanded money and they hit and kicked Nigh in the face, and threatened to kill him.
 {¶ 3} Nigh told the intruders he had a few thousand dollars hidden around the house, and the intruders ransacked Nigh's home looking for the money. Before leaving, one of the intruders shot Nigh in the leg. Nigh called the police and requested an ambulance. After police arrived Nigh was taken to the hospital. The police dusted Nigh's house for fingerprints, including anything the suspects may have touched while ransacking the place. On a green metal lockbox discovered in the hallway, police found one latent print and lifted it. Police also found a shell casing but not the bullet that entered and exited Nigh's leg. Several days after this home invasion, when the blood stained carpet was removed, police found the bullet under the carpet.
 {¶ 4} When the latent print recovered from the metal lockbox was run through the Springfield Police Automated Fingerprint Identification System, it matched Defendant's left *Page 3 
pinky fingerprint. Further comparison confirmed that the latent print on the top of the metal lockbox found in the hallway of Nigh's home was Defendant's fingerprint. Defendant was arrested and transported to the Clark County jail.
 {¶ 5} While Defendant was in the intake area of the jail, Springfield Police Detective Douglas Estep approached Defendant and asked him if he wanted to come over to the police station and talk to him about this case. At that point Defendant said his girlfriend had found on the internet Detective Estep's statement about the latent print police found at the crime scene, and Defendant wanted to know where that fingerprint came from. Detective Estep told Defendant that is something they would have to talk about. Defendant went on to say that he has handled a lot of guns on the street. When Defendant subsequently said he didn't want to talk anymore about it, Detective Estep left it at that and did not Mirandize Defendant or question him.
 {¶ 6} Defendant was indicted on one count of aggravated robbery, R.C.2911.01(A)(1), with a firearm specification attached. R.C. 2941.145. Defendant filed a motion to suppress the statements he made to Detective Estep at the jail, arguing that police elicited those statements while Defendant was in custody but without advising Defendant of his *Page 4 Miranda rights. Following a hearing held on March 19, 2007,
the trial court filed its Decision and Entry on March 20, 2007, overruling Defendant's motion to suppress his statements because Defendant's statements were spontaneously volunteered and were not the product of interrogation by Detective Estep. Following a jury trial Defendant was found guilty of both aggravated robbery and the gun specification. The trial court sentenced Defendant to ten years for the aggravated robbery plus an additional and consecutive three years on the firearm specification, for a total sentence of thirteen years.
 {¶ 7} Defendant has timely appealed to this court from his conviction and sentence.
 {¶ 8} ASSIGNMENT OF ERROR
 {¶ 9} "THE TRIAL COURT ERRED WHEN IT ADMITTED VARIOUS STATEMENTS INTO EVIDENCE THAT WERE OBTAINED FROM MR. THOMPSON IN CONTRAVENTION OF HIS PRIVILEGE AGAINST SELF-INCRIMINATION, AS GUARANTEED BY THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 10} Defendant argues that the trial court violated his constitutional rights against self-incrimination when it failed to suppress the statements he made to Detective Estep at the jail which were the product of custodial interrogation *Page 5 
and were elicited before Defendant was advised of his rights pursuant toMiranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed2d 694.
 {¶ 11} Initially, we note that in reviewing a trial court's decision on a motion to suppress, we are guided by the following standard:
 {¶ 12} "We are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." State v. Retherford (1994),93 Ohio App.3d 586, 592.
 {¶ 13} The trial court's findings of fact in this matter are as follows:
 {¶ 14} "On May 31, 2006, upon learning that uniform patrol officers had arrested the defendant on outstanding warrants, Detective Estep went to the intake center at the Clark County Jail and introduced himself to the defendant. Detective Estep asked the defendant if he wanted to come over to the police department to talk about this case. The defendant informed Detective Estep that he was aware that the court statement in the case purported to link him to the crime by way of a *Page 6 
fingerprint. The defendant asked Detective Estep where the fingerprint came from. Detective Estep then told the defendant that they would discuss that issue during the interview. The defendant, apparently under the impression that the print came from a gun, then stated that he had handled a lot of guns on the street.
 {¶ 15} "Ultimately, the defendant stated that he did not want to make a statement. Detective Estep honored the defendant's position and returned to headquarters."
 {¶ 16} Before interrogating a suspect who is in custody,Miranda requires that law enforcement officers inform the suspect of his/her right to remain silent, that any statements the suspect makes may be used as evidence against him/her in court, that the suspect has a right to have an attorney present during questioning, and if the suspect cannot afford an attorney, one will be appointed. Miranda,384 U.S. at 478-479. Absent these warnings, the suspect's statements are not admissible. Id.
 {¶ 17} In Miranda the Supreme Court defined custodial interrogation as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Id., at 444. In Rhode Island v. Innis (1980), *Page 7 
446 U.S. 291, 301-302, 100 S.Ct. 1682, 64 L.Ed.2d 297, the Supreme Court explained that the term interrogation under Miranda refers not only to express questioning, but also to any words or actions on the part of the police that they should know are reasonably likely to elicit an incriminating response. Accord: State v. Williams (1983),6 Ohio St. 3d 281.
 {¶ 18} At the suppression hearing the parties agreed and stipulated that Defendant was in custody at the time he made his statements to Detective Estep. Moreover, it is clear that Defendant was not advised of his Miranda rights before he made his statements. Thus, the sole issue in this case is whether Defendant's statements to Detective Estep were the product of interrogation for purposes of Miranda.
 {¶ 19} In overruling Defendant's motion to suppress his statements, the trial court concluded that Detective Estep did not interrogate Defendant within the meaning of Miranda because there were no questions, statements or remarks that Detective Estep should have known were reasonably likely to elicit an incriminating response from Defendant. We agree. Detective Estep merely asked Defendant if he wanted to come over to the police department and talk to him about this case. At that point Defendant spontaneously volunteered the statements he made. One would reasonably expect that *Page 8 
Detective Estep's question to Defendant about whether Defendant wanted to come over to the police station and talk about this case would elicit a yes or no response. The question was not likely to elicit an incriminating response and Detective Estep could not have reasonably foreseen such a response from Defendant. Innis, 446 U.S. at 301-302.
 {¶ 20} Defendant argues that this case is similar to State v.Lentz (1991), 73 Ohio App.3d 449. We disagree. The police officer inLentz testified that if he felt the suspect was familiar with the criminal justice system, he would not read the person his/herMiranda rights. After the person had been arrested and while in transit to the police station, the officer would engage the arrestee in casual conversation. The officer admitted he initiates these conversations to establish a rapport with the arrestee with full knowledge that the suspect may blurt out incriminating statements. These facts demonstrate an intentional police practice designed to elicit incriminating statements from the accused without the benefit of Miranda warnings. No such deceptive practice occurred in this case.
 {¶ 21} Detective Estep was not engaging in casual conversation with Defendant for the purpose of building a rapport or creating an atmosphere of camaraderie, hoping that *Page 9 
Defendant would blurt out incriminating statements. Detective Estep asked one question, whether Defendant wanted to come over to the police station and talk about this case. Defendant responded with his own question, wanting to know where the fingerprint found at the crime scene came from. Detective Estep could not have reasonably anticipated that response, based upon the question he asked. Still, Detective Estep did not take advantage of Defendant's curiosity, but simply said that is something they would have to talk about. At that point Defendant blurted out that he had handled a lot of guns on the street. Defendant's statements were spontaneous and volunteered, and were not the product of interrogation, i.e., questions, statements or actions on the part of Detective Estep that he should have known were reasonably likely to elicit an incriminating response from Defendant. Therefore,Miranda does not apply and the trial court properly overruled Defendant's motion to suppress his statements.
 {¶ 22} Defendant's assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. And DONOVAN, J., concur.
(Hon. Anthony Valen, retired from the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 10 
Copies mailed to:
Amy M. Smith, Esq.
David H. Bodiker, Esq.
Katherine A. Skudy
 Hon. Douglas M. Rastatter *Page 1