DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas which, following a jury trial, found appellant, Maurice Glover, guilty on two counts of felonious assault with a firearm specification, in violation of R.C. 2903.11(A)(2) and 2941.145, both being felonies of the second degree. Appellant's conviction arose as a result of a shooting incident that occurred shortly before 3:00 a.m. on March 16, 2000, at the Cherrywood Apartments, wherein Jamaine Hill was shot in the leg and Ronald Smith was shot at, but not hit. Appellant was sentenced to a term of seven years on each count of felonious assault to be served concurrently to one another and consecutively to a mandatory term of three years actual incarceration with respect to the firearm specifications. For the reasons that follow, we affirm appellant's conviction.
 {¶ 2} Appellant was granted leave to file a delayed appeal and raises the following sole assignment of error:
 {¶ 3} "Appellant received ineffective assistance in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution as well as under Section 10, Article I, of the Ohio Constitution."
 {¶ 4} Appellant raises five instances wherein he asserts his trial counsel was ineffective: (1) counsel failed to file a notice of alibi; (2) counsel allowed the prosecutor to introduce testimony about appellant's post-Miranda silence during the testimony of Detective Navarre; (3)counsel allowed the prosecutor to introduce testimony about appellant's post-Miranda silence during the testimony of Valerie Barnett; (4) counsel allowed the prosecutor to comment in closing upon appellant's post-Miranda silence; and (5) counsel failed to object to an alleged dying declaration made by the shooting victim to a Toledo Police Officer.
 {¶ 5} We note at the outset that, in Ohio, a properly licensed attorney is presumed competent and the burden is on the appellant to show counsel's ineffectiveness. State v. Lytle (1976), 48 Ohio St.2d 391;State v. Hamblin (1988), 37 Ohio St.3d 153. The United States Supreme Court, in Strickland v. Washington (1984), 466 U.S. 668, 686, set forth a two-part test for reviewing claims of ineffectiveness:
 {¶ 6} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by theSixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
 {¶ 7} The United States Supreme Court held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." Id. Specifically, to establish ineffectiveness, appellant must show that, but for counsel's deficient performance, there is a reasonable probability the result of the trial would have been different. Id.
 {¶ 8} The effective assistance of counsel, however, does not guarantee results. State v. Longo (1982), 4 Ohio App.3d 136. "A failure to prevail at trial does not grant an appellant license to appeal the professional judgment and tactics of his trial attorney." State v. Hart
(1988), 57 Ohio App.3d 4, 10. Reviewing courts must not use hindsight to second-guess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners. SeeStrickland at 689.
 {¶ 9} Appellant claims that he was denied the effective assistance of trial counsel due to his counsel's failure to file a notice of alibi, as required by Crim.R. 12.1, despite the fact that it was the "crux" of appellant's defense to the charges filed against him. Appellant argues that defense counsel should be expected to "present all of an accused's available defenses to a jury for consideration" and that counsel's failure in this case to present appellant's alibi defense "most certainly falls below an `objective standard of reasonable representation'." Appellant further argues that he was prejudiced by counsel's failure to file a notice of alibi because "the trial court excluded the exculpatory testimony of appellant's alibi witness, Curtis King, that appellant was somewhere else when shots were fired" at the victims, and because "the jury was instructed to disregard Mr. King's alibi testimony because it had been stricken due to counsel's error." Appellant asserts that had the jury been able to consider Mr. King's testimony, there was a "reasonable probability" that the outcome of the trial would have been different.
 {¶ 10} The state responds that, although counsel did not file a notice of alibi, appellant was not prejudiced by this alleged error because the fact that appellant was with King at the time of the offense was essentially presented to the jury through the testimony of Cassandra Holmes and Gloria Harris. Appellant, however, replies that Holmes' and Harris' testimony did not cure the potential prejudice because neither witness could testify as to appellant's location at the time of the shooting.
 {¶ 11} When determining the "alibi" issue, the trial court, prosecutor, and defense counsel all proceeded on the basis that King's testimony placed appellant at a different location than the Cherrywood Apartments at the time of the shooting. After a thorough review of the testimony, however, we find that King's testimony did not provide appellant with an alibi. King testified that he and appellant left the bar where they were at closing time. We know from Gloria Harris' testimony that the bar closed between 2:30 a.m. and 2:35 a.m. King testified that after leaving the bar, he and appellant "Went to my girl friend [sic] house and had her dropped [sic] us off at home." Although home was on Mulberry Street, not at the scene of the shooting, King's earlier testimony established that his girl friend's residence was at the Cherrywood Apartments. As such, King's testimony placed appellant at the scene of the crime.
 {¶ 12} Moreover, according to Gloria Harris, she drove home to the Cherrywood Apartments, whereas King and appellant were on foot. Ms. Harris estimated her arrival at home to be between 2:35 a.m. and 2:40 a.m. She also estimated that she heard the gunshots from this incident, which occurred close to her home, between 10 and 15 minutes after her arrival home. Accordingly, based on the fact that King and appellant walked to the Cherrywood Apartments from the bar, rather than drove, King's and Harris' testimony place appellant at the scene of the shooting at the approximate time of the shooting.
 {¶ 13} We additionally note that although King testified that appellant was with him the entire time, King was never asked if he saw appellant shoot anyone while he was in King's presence. As such, we find that not only does King's testimony not place appellant at a different location than the scene of the crime, at the time of the crime, the fact that appellant was with King the entire time also does not exonerate appellant of the crime.
 {¶ 14} King's testimony did not provide appellant with an alibi, or exonerate appellant of the shooting. As such, we find that trial counsel's failure to file a notice of alibi was neither deficient, nor prejudicial, to appellant's case. Accordingly, appellant was not denied the effective assistance of counsel in this regard.
 {¶ 15} Appellant's next three arguments concern counsel's failure to object to the prosecutor's comments concerning appellant's post-Miranda silence. Appellant turned himself in to the Toledo Police Department after his picture appeared in the newspaper in connection with this shooting. According to appellant and Detective Navarre, appellant was arrested, read his Miranda warnings, and, thereafter, refused to be interrogated until he spoke with his lawyer. Appellant argues that the prosecutor asked questions and made closing remarks concerning appellant's post-Miranda silence which violated appellant's rights to due process. SeeDoyle v. Ohio (1976), 426 U.S. 610. Appellant argues that counsel was ineffective for failing to object to these improper and "fundamentally unfair" remarks.
 {¶ 16} Appellant asserts that counsel should have objected to the following question posed to Detective Navarre during the state's direct examination:
 {¶ 17} "PROSECUTOR: At some point after he turned himself in and asked for an attorney, did he attempt to contact you, to talk to you, say he changed his mind, he wanted to talk to you?
 {¶ 18} "DETECTIVE NAVARRE: No."
 {¶ 19} Appellant also asserts that counsel should have objected to the following questions posed to Valerie Barnett during the state's re-cross:
 {¶ 20} "PROSECUTOR: [Appellant] indicated to you that he wanted to talk to the police about it, right?
 {¶ 21} "MS. BARNETT: Yes.
 {¶ 22} "PROSECUTOR: And you had every reason to believe when he got that opportunity he was going to talk to them?
 {¶ 23} "MS. BARNETT: Yes.
 {¶ 24} "PROSECUTOR: Okay. So when he got his opportunity to sit down with Detective Navarre, he never spoke with him, did he?
 {¶ 25} "MS. BARNETT: That was after Detective Navarre put his picture in the paper, and and then there was no need to talk to him. He wanted to talk to him in front of the presence of his attorney.
 {¶ 26} Appellant further asserts that counsel should have objected to the following statements made by the state during closing arguments:
 {¶ 27} "Now, he wanted to make this entire big ordeal over the fact that he saw his picture in the paper and was going to talk to his mom. And you know, I got to talk to Navarre, and I'm going to turn myself in. Then, after availing himself of every opportunity potentially to be able to explain exactly what he says was the truth as he was sitting there, never did that.
 {¶ 28} "When faced with that opportunity, he didn't go search out Detective Navarre. Legally he had the right to go seek counsel from Marty Dow, and that's what he did."
 {¶ 29} In Doyle v. Ohio (1976), 426 U.S. 610, 618, the United States Supreme Court held that the Miranda warnings contain an implicit assurance that "silence will carry no penalty." As such, the United States Supreme Court held that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id. As indicated above, the prosecution referred to appellant's post-Miranda
silence several times. Pursuant to Doyle, supra, we find that the prosecution violated appellant's right to due process. Trial counsel's failure to object to these questions and remarks by the prosecution was therefore deficient. Nevertheless, appellant's conviction can be sustained so long as appellant was not prejudiced by counsel's performance.
 {¶ 30} To sustain appellant's conviction, we must find that the impermissible references to appellant's post-Miranda silence were "harmless beyond a reasonable doubt." State v. Moreland (1990),50 Ohio St.3d 58, 64, citing Chapman v. California (1967), 386 U.S. 18, and State v. Williams (1983), 6 Ohio St.3d 281, paragraph three of the syllabus. "Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." Williams at paragraph six of the syllabus.
 {¶ 31} Upon review of the evidence presented at trial, we find that there was overwhelming proof of appellant's guilt. The shooting took place in a well-lit parking lot. Both victims of the shooting positively identified appellant as the shooter from a photo array. Hill, in fact, knew appellant prior to the shooting and had made threatening remarks to appellant during the evening prior to the shooting. Cassandra and Lahkesha Holmes both testified that some time after Hill made threats to appellant, appellant questioned Lahkesha about how to contact Hill. Cassandra testified that appellant stated he was going to get a gun. Lahkesha testified that appellant stated he was going to blow Hill's "high off" when he next saw him. Lahkesha took this statement to mean that appellant was going to shoot Hill. Gloria Harris also testified that she had spoken with appellant concerning Hill's threats, in an effort to diffuse the situation. According to Harris, appellant told her, "Well, I would fight him if it fair, but if he wanted pistol play, we pistol play." Both victims of the shooting testified that appellant asked, "What's up with your boy?," referring to Hill, prior to firing his handgun. In addition, as stated above, both appellant's and King's testimony place appellant at the Cherrywood Apartments around the time of the shooting.
 {¶ 32} Based on the overwhelming evidence presented, we find that appellant failed to show that, but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different. See Strickland, supra. Accordingly, we find appellant failed to prove that he was denied the effective assistance of counsel in this regard.
 {¶ 33} Appellant finally argues that he was denied the effective assistance of counsel when counsel failed to object to the admission of an alleged dying declaration made by the shooting victim, Jamaine Hill, while at the hospital where he was receiving treatment. Specifically, appellant argues that the statement made by Hill did not comply with the Evid.R. 804(B)(2), insofar as Hill was neither unavailable nor believed that his death was imminent.
 {¶ 34} The state responds that, although Hill's declaration identifying appellant as the shooter does not qualify as a dying declaration under Evid.R. 804(B)(2), it was nevertheless admissible into evidence under Evid.R. 803(1), as a present sense impression, and Evid.R. 803(2), as an excited utterance. We agree.
 {¶ 35} Immediately after the shooting, but prior to losing consciousness in the hospital, Hill told police that "Smurf" shot him. As the police later discovered, "Smurf" was appellant's nickname. Officer Jeffrey Clark testified to this statement at trial. Evid.R. 803(1) and (2) state that a present sense impression and an excited utterance are not excluded by the hearsay rule, even though the declarant is available as a witness. A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
 {¶ 36} We find that Hill's statement made to Officer Clark qualifies as either a present sense impression or an excited utterance. As such, we find that appellant failed to establish that his trial counsel's performance was deficient in failing to object to Officer Clark's testimony.
 {¶ 37} Accordingly, we find appellant's sole assignment of error not well-taken. On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Richard W. Knepper, J., Mark L. Pietrykowski, J., and Arlene Singer, J. JUDGE CONCUR.